IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RALPH NAYLOR FARMS, LLC, ) | |
| ) | |
| Plaintiff, ) | Case No. CV07-139-S-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| LATAH COUNTY, et al, ) | |
| ) | |
| Defendants. ) | |

Plaintiff Ralph Naylor Farms, LLC ("Naylor") initiated this action against Latah County, the Latah County Commissioners, and two county employees (collectively "the County") alleging a state inverse condemnation claim, a federal takings violation, and violations of substantive due process and equal protection. The County subsequently filed a motion for summary judgment. The motion is now ripe. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without a hearing.

**Background**

Naylor owns 634 acres of land, three miles north of the city of Moscow, in Latah County, Idaho. The property is classified under the Latah County Zoning Ordinance for agriculture and forestry use. Under the County's zoning ordinances, other, conditional uses of the property are permitted by securing a Conditional Use Permit ("CUP").

Naylor sought to improve the profitability of the farm by obtaining water rights for irrigation and to facilitate mineral extraction for gravel, sand, and clay. To this end, Naylor filed an application for water rights with the Idaho Department of Water Resources ("IDWR") in June of 2002. The County and several environmental advocacy organizations opposed the application.

While the application process was proceeding, on March 2, 2005, Naylor filed an application and proposed reclamation plan with the Idaho Department of Lands ("IDL") to extract sand and gravel for commercial sale. On that same day, the County adopted emergency ordinance 258, entitled "Moscow Sub-Basin Groundwater Management Overlay Zone," that prohibited mineral extraction and processing, feedlots exceeding 200 animals, and golf courses in an area covering approximately 38,035 acres surrounding Moscow, including all of the Naylor farm.

On May 16, 2005, Naylor was granted a mining permit from the IDL. On June 27 and 28, 2005, Naylor attempted to file a CUP application with the County for the purpose of obtaining a permit which would allow it to extract sand and gravel from the farm. The County did not accept the CUP application because mining was a prohibited use under Emergency Ordinance 258.

In the meantime, after various hearings on the application for water rights, on May 27, 2005, IDWR issued an Amended Preliminary Order denying Naylor's application.

On July 25, 2005, Naylor filed a complaint in state district court seeking an order declaring Emergency Ordinance 258 unconstitutional. On May 9, 2006, the state district court held that Emergency Ordinance 258 was "invalid pursuant to doctrine of implied preemption," because the power to manage ground water resided solely with the state, and not the County.

Following the ruling, on May 11, 2006, Naylor resubmitted its CUP application to the County. Naylor also filed a state court lawsuit against the County seeking an injunction to prohibit the Latah County Commissioners (the "Commissioners") from ruling on the CUP

application because of alleged bias. Ultimately, the state court denied the requested injunction after concluding that Naylor had failed to show the requisite bias.

On July 13, 2006, Naylor's CUP application was approved by the Latah County Zoning Commission, subject to several conditions. Thereafter, a three day public hearing was held on Naylor's CUP application before the Commissioners. The majority of public testimony at the hearing was against the application. The Commissioners eventually issued a written decision that denied the CUP application.

Naylor then filed a state court Petition for Judicial Review of the Commissioners' decision to deny the CUP application. The Petition alleged among other things that the Commissioners were biased, that the Commissioners had acted beyond their constitutional authority and that Naylor's procedural due process rights had been violated. On August 16, 2007, the state court ruled against Naylor on all counts and upheld the denial of the CUP application. Naylor did not appeal that decision.

Subsequently, Naylor filed the current lawsuit alleging a state inverse condemnation claim, a federal takings violation, and violations of substantive due process and equal protection. The County then moved for summary judgment. The Court's decision is set forth below.

## Standards

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Adams v. Synthes Spine Co., 298 F.3d 1114, 1116-17 (9th Cir. 2002).

## Discussion

1. Takings Claim and Inverse Condemnation

The "Fifth Amendment of the United States Constitution, which constrains municipalities through its incorporation by the Fourteenth Amendment, states 'nor shall private property be taken for public use, without just compensation.'" Weinberg v. Whatcom County, 241 F.3d 746, 752 (9th Cir. 2001). Naylor contends that by denying the "CUP

application and interfering with Naylor's water request, Latah County is depriving Naylor of the beneficial use of its property which constitutes a taking of property." (See e.g., Aff. of Robb Lemke ¶ 85). The County asserts, in turn, that Naylor's takings claim is not yet ripe for judicial review.

In Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194-95 (1985), the United States Supreme Court held that a Fifth Amendment takings claim is not ripe until the landowner has sought "compensation through the procedures the state has provided." Naylor concedes that it has not obtained a ruling in state court on its state law inverse condemnation claim but urges this Court to rule on that matter thereby rendering ripe the federal takings claim.

As a procedural matter, Naylor's proposed solution to its ripeness problem ignores the fact that ripeness is evaluated at the time the case is filed. See, e.g., Lockary v. Kayfetz, 917 F.2d 1150, 1153-54 (9th Cir.1990) (ripeness in takings case determined at time the suit was filed); Schnuck v. City of Santa Monica, 935 F.2d 171, 174 (9th Cir. 1991) (same): Hawaii Newspaper Agency v. Bronster, 103 F.3d 742, 746 (9th Cir. 1996) (explaining that federal courts may not exercise jurisdiction over an action that is not ripe at the time the case is filed).

On a more fundamental level, Naylor misunderstands the nature of a takings claim. As the Supreme Court explained: "[B]ecause the Fifth Amendment proscribes takings *without just compensation*, no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation *before* bringing a § 1983 action." Williamson County, 473 U.S. at 195 n.13 (emphasis in original).

Here, Naylor has not availed itself of state procedures to determine whether it will receive just compensation. Therefore, any Fifth Amendment takings claim is premature.[1] Id. at 195-97 (explaining that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation" and "until [plaintiff] has utilized that procedure, its taking claim is premature"). "[B]ecause the question of ripeness goes to [the Court's] subject matter jurisdiction to hear the case," Naylor's federal takings claim must be dismissed. Hawaii Newspaper Agency, 103 F.3d at 746. And in accordance with the discussion above, Naylor's state law inverse condemnation claim will be dismissed without prejudice to refiling in state court. Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1392-93 (9th Cir. 1997) (explaining that a federal court may decline to exercise 28 U.S.C. § 1367 supplemental jurisdiction over a complex issue of state law).

### 2. Substantive Due Process

Naylor also is asserting a substantive due process claim whereby it is "seeking compensation for being deprived of its right to a fair and impartial hearing." (Pl's Resp. at 16). Naylor contends that the Commissioners were biased and had already made a decision regarding its CUP application prior to the hearing on the matter. The County, in turn, points to several fatal flaws in Naylor's claim. Despite Naylor's protestations to the contrary, the Court must agree with the County.

---

[1] Naylor acknowledges that under the ripeness doctrine it "would be required to initiate another state court action against the County for inverse condemnation for the regulatory taking," but argues that to promote judicial economy it is preferable to have the federal court address all claims instead of maintaining two lawsuits. (Pl's Resp. at 13-14). The flaw in this reasoning, of course, is that the state courts are perfectly competent to hear and decide claims based on alleged violations of the federal constitution. See e.g., Allen v. McCurry, 449 U.S. 90, 96-98, 105 (1980). Naylor, therefore, could have proceeded in only one court to obtain a ruling on all its claims, but that action would have been in state court.

Similarly, Naylor's suggestion that "futility" excuses compliance with the ripeness doctrine is contrary to case law. The Ninth Circuit has made clear that "subsequent to Williamson County, we and other courts of appeals routinely have held that state procedures are considered inadequate only when state law provides no post-deprivation remedy for a taking." Dodd v. Hood River County, 59 F.3d 852, 861 (9th Cir.1995);see also Schnuck v. City of Santa Monica, 935 F.2d 171, 174 (9th Cir. 1991) (stating that plaintiff "must show that state courts establish that landowners may not obtain just compensation through an inverse condemnation action under any circumstances"). Because Idaho recognizes a cause of action for inverse condemnation, see e.g., Ada County Highway Dist. v. Total Success Investments, LLC, 179 P.3d 323, 332 (Idaho 2008), Naylor's Fifth Amendment claim is not ripe until the state court decides if it will compensate Naylor for any alleged taking. Dodd, 59 F.3d at 861.

Naylor's substantive due process claim is barred for a variety of reasons. First, case law precludes a plaintiff from presenting what is essentially a takings claims as a violation of substantive due process. See e.g., Esplanade Properties, LLC v. City of Seattle, 307 F.3d 978, 983 (9th Cir. 2002) (collecting cases in which it was proper to dismiss a substantive due process claim because it was "properly subsumed by the takings claim"); Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura, 371 F.3d 1046, 1054-55 (9th Cir. 2004) (same).

Second, Naylor asserts that the Commissioners lacked impartiality rather than arguing that the Commissioners acted arbitrarily or unreasonably, (Pl's Resp. at 16-18), as is required in order to fit under a substantive due process violation. See e.g., Crown Point Dev., Inc. v. Sun Valley, 506 F.3d 856-57 (9th Cir. 2007).

Finally, any challenge to the Commissioners impartiality is barred by *res judicata*. Naylor litigated this issue in state court and lost. (Aff. Of Bentley G. Stromberg, Ex. 1, Memorandum Opinion and Order on Petition for Judicial Review at 24-29 (concluding that the "Court reviewed the record for support of the argument that the commissioners acted in a biased manner [and] finding no support in the record, [Naylor's] argument is denied")). Thus, the Court is barred from reconsidering the question here. See e.g., Manufactured Home Cmtys v. City of San Jose, 420 F.3d 1022, 1031 (9th Cir.2005) (explaining that a final state court decision on same issues underlying constitutional claims pending in federal court requires application of *res judicata*). For all the above reasons, the Court will grant summary judgment in favor of the County on Naylor's substantive due process claim.

### 3. Equal Protection

Naylor contends that the Commissioners' enactment of Emergency Ordinance 258 and the Commissioners' denial of its CUP application violated its equal protection rights. For the Commissioners' decision in enacting the ordinance and denying the application to "meet the constitutional challenge" there need be "only some rational relation to a legitimate state interest." Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 67 (9th Cir. 1994).

Both actions by the Commissioners satisfy this standard. The stated purpose of Emergency Ordinance 258 was to put in place a temporary moratorium on certain land use practices to allow the County time to study ground water management issues. (Aff. of James E.M. Craig, Ex. 1, Latah County Ordinance No. 258). This purpose is certainly rationally related to a "legitimate state interest."

Naylor, however, suggests that the stated reasons for enactment were pretextual because several Commissioners made statements suggesting that Emergency Ordinance 258 was enacted to "limit certain water-depleting land uses" and to oppose the type of land use anticipated by the "request from Naylor for a conditional use permit." (Pl's Resp. at 18-19). In essence, Naylor asserts that these statements demonstrate that Emergency Ordinance 258 was aimed solely at its farm. (Id.). But this argument fails in light of the fact that Emergency Ordinance 258 encompassed more than 38,000 acres, made up of over 1,070 separate property parcels, of which Naylor's farm accounted for only 1.67% of the impacted area. (Aff. of James E.M. Craig, Ex. 2, Second Aff. of Michelle Fuson ¶ 8). Furthermore, the ordinance placed a temporary moratorium not only on mineral extraction but also feedlots and golf courses. (Aff. of James E.M. Craig, Ex. 1, Latah County Ordinance No. 258).

The circumstances here, then, are much different than the facts contained in the case cited by Naylor, Armendariz v. Penman, 75 F.3d 1311 (9th Cir. 1996), abrogation recognized by, Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020 (9th Cir. 2007). In Armendariz the plaintiffs introduced evidence that showed the defendants "were motivated by a desire to acquire the plaintiffs' properties [and] replace them with a shopping center." Id. at 1328. Here in contrast, Naylor has failed to submit any evidence to raise a genuine issue of material fact to show that the Commissioners' acted on an impermissible motive when they passed Emergency Ordinance 258.

Similarly, the Commissioners' denial of Naylor's CUP application was rationally related to a legitimate governmental interest. In a written decision, issued after a hearing that lasted three days, the Commissioners denied the CUP application because among other things it was opposed by the majority of the public, it would create a dangerous traffic control problem, it would increase soil and wind erosion and noise and dust concerns, and it would affect neighboring land values. (Aff. of James E.M. Craig, Ex. 8, Commissioners'

Findings of Fact and Conclusions of Law). Naylor implies that the Commissioners' decision was really motivated by a desire to retaliate, but there is no competent evidence to support this notion. Significantly, the Commissioner's denial of Naylor's CUP application was reviewed by the state court and it found no irregularities. (Aff. Of Bentley G. Stromberg, Ex. 1, Memorandum Opinion and Order on Petition for Judicial Review at 11-29 (finding among other things that the Commissioners followed the state's mandates "which require the board to consider the promotion of the health, safety and general welfare of the people of the State of Idaho" and that the "record does not support [Naylor's] argument that the individual commissioners did not act as fair and impartial decision makers").

There being no genuine issue of material fact, the Court will grant summary judgment on Naylor's equal protection claim.

## ORDER

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that the Defendants' Motion for Summary Judgment (docket no. 18) is **GRANTED** as follows:

1. The Plaintiff's Third Cause of Action, the substantive due process claim, and the Plaintiff's Fourth Cause of Action, the equal protection claim, are **DISMISSED with prejudice**;

2. The Plaintiff's First Cause of Action, the state law inverse condemnation claim, is **DISMISSED without prejudice** to refiling in state court; and

3. The Plaintiff's Second Cause of Action, the takings claim, is **DISMISSED without prejudice** as not yet ripe; and

4. The above entitled action is terminated.

DATED: **May 6, 2008**

Honorable Edward J. Lodge
U. S. District Judge